### SOMERS and others *against* MINER.

In *January* 1816, sundry persons, members of an ecclesiastical society, desirous of perpetuating the blessings of the gospel therein, subscribed a written instrument, whereby they severally promised to pay to the society's committee the sums annexed to their names respectively, with the lawful interest until paid; the principal sums to remain a perpetual fund, and the interest to be appropriated exclusively to the support of a minister, to be approved by the association of ministers within whose limits the subscribers lived; no person to be obliged to pay the principal sum subscribed, during his life, provided the interest should be paid punctually once a year, and the principal should be secure to the satisfaction of the committee. It was also provided, that the subscription should not be binding on any of the subscribers, unless there should be subscribed and well secured, by the 1st of *May* then next, at least 5000 dollars. The defendant, who was a member of the society, and so continued until 1829, signed this writing, annexing thereto the sum of 500 dollars, which, with other subscriptions by responsible persons, within the time limited, amounted to 5270 dollars; but no other security was given than the subscriptions themselves. In *Oc-*

tober, 1817, at a meeting of the consociation, within the local limits of *Litchfi'd,* which the society is, warned and held for the purpose, it was voted unan- June, 1833. imously, that it was expedient to ordain the Rev. Mr. *A.* and set him over the society; and the ministers present, being a majority of the members of the association, then ordained him; these proceedings being in conformity with the usages of the congregational churches and societies within the lim- its of the association. Ever since his ordination, he has been recognized and received as a member of the association. The limits of the consocia- tion and association are co-extensive; the consociation embracing all the ministers of the association and no others; but they are distinct bodies, with different powers, organized for different purposes and composed of different members; the former being composed of the ordained congrega- tional ministers living within its limits and one lay delegate from each church, and the latter consisting exclusively of the ordained ministers. The defendant paid the interest, annually, on his subscription, without objection, until *January* 1829, and then refused to make further payment. In an action to recover principal and interest, it was held, 1. that there was a sufficient consideration to support the defendant's promise; 2. that the condition annexed, requiring the sums subscribed to be *well secured,* was complied with, that expression, within the meaning of the contract, be- ing satisfied, by the signature of one responsible person; 3. that the condition requiring the minister to be *approved by the association* of ministers, was complied with.

Somers
*v.*
Miner.

THIS was an action of *assumpsit,* brought by *Eli Somers, Erastus Minor* and *Harvey J. Lindsley,* committee of the *Presbyterian* or First Ecclesiastical Society in *Woodbury,* to recover the sum of 500 dollars and the interest thereon from the 1st of *January* 1829; the principal sum being the amount subscribed, by the defendant, for the support of the gospel ministry in that society.

The declaration alleged, That the defendant, in and by a certain writing or agreement, under his hand, by him well ex- ecuted, bearing date the 16th of *January* 1816, for the pur- pose of perpetuating the blessings of the gospel in said society, of which the defendant was then a member, and enjoying all the privileges of a member thereof, did engage and promise to pay to the committee of said society, and their successors in office, the sum of 500 dollars, and the lawful interest thereon from the 1st of *January* 1816 until paid; the principal sum to be and remain a perpetual fund, and the interest arising there- on to be appropriated exclusively to the support of a *Presby- terian* minister, to be approved by the association of minis- ters, in whose limits the defendant then lived, and who should preach the pure doctrines of the gospel, &c. The declara-

*Litchfield,*
June, 1833.

Somers,
*v.*
Miner.

tion then set forth the several stipulations or terms of the writing, and averred performance on the part of the plaintiffs.

The cause was tried, on the general issue, at *Litchfield, August* term, 1832, before *Bissell,* J.

The plaintiff read in evidence the following writing : " The subscribers, members of the *Presbyterian* society in *Woodbury,* desirous of perpetuating the blessings of the gospel therein, do hereby engage and promise to pay to the committee of said society, and to their successors in office, the several sums respectively annexed to our names, with the lawful interest from the 1st day of *January* instant until paid : the principal sums to be and remain a perpetual fund, and the interest arising thereon, shall be appropriated, exclusively, to the support of a *Presbyterian* minister, to be approved by the association of ministers, in whose limits we live, and who shall preach the pure doctrines of the gospel, generally called *Calvinistic,* or in conformity to the shorter catechism of the *Westminster* assembly of divines. [Then follows a provision, on which no question arose in the case.] No person shall be obliged to pay the principal sum subscribed, during his life, provided the interest shall be paid punctually once a year. and the principal shall be secure, to the satisfaction of the committee of said society. It is further stipulated and agreed, that this subscription shall not be binding on any of the subscribers, unless there shall be subscribed and well secured, by the 1st of *May* next, at least to the amount of 5000 dollars. Dated at *Woodbury,* this 16th day of *January,* 1816."

It was admitted, that the defendant signed this writing, annexing thereto the sum of 500 dollars ; that it was also subscribed, by *Nathaniel Smith,* for 1000 dollars, by *Noah B. Benedict,* for 1000 dollars, and by sundry other persons, members of the society, for several smaller sums, amounting in the whole to 5270 dollars ; that this amount was subscribed, by responsible persons, within the time specified in the writing ; that the defendant, when he subscribed the writing, was a member of the society, and so continued to be until 1829 ; that he had paid the interest, annually, on his subscription, without objection, until the first of *January* of that year ; and that the persons mentioned in the writing, to whom and to whose successors the sums subscribed were made payable, were then the committee of the society, and that the plaintiffs are their

successors in that office. The plaintiffs offered evidence to prove, and it was not denied, that the other subscribers had paid the annual interest on their subscriptions until the time of trial.

The defendant claimed that he was not liable in this action, because the sums subscribed had not been *well secured,* according to the terms and within the spirit and meaning of the contract.

It was admitted, that no other security had been given, than the subscription of persons able to pay, and fully responsible for the sums by them respectively subscribed.

The plaintiffs insisted, that this was all the security contemplated by the contract. They also insisted, that if there had not been a strict performance of the condition, yet the defendant had, by the payment of interest on his subscription, waived such performance, and could not avail himself of the objection.

The defendant, on the other hand, insisted, that the plaintiffs' construction of the contract was not correct; and that the jury had no right to presume a waiver from the facts admitted and proved; and prayed the judge to instruct them accordingly.

The judge instructed the jury, that the expression *well secured,* as used in the contract, was not satisfied, by the mere subscription of persons, how responsible soever; and it being admitted, that no other security was given, they must find, that this condition in the contract had not been performed. But if they should find, that the defendant knew that no security other than the subscriptions had been given, and had never objected on that ground, but had annually paid the interest on his subscription until 1829, they had a right to presume, that he had waived the objection; and if he had so waived it, he could not insist on it as a defence.

The defendant further insisted, that the Rev. Mr. *Andrew,* who, it was admitted, was ordained and set over the society, as the minister thereof, on the 8th of *October,* 1817, had not been approved, by the association of ministers, according to the condition of the writing.

To shew such approbation, the plaintiffs offered evidence conducing to prove, that a meeting of the *South* consociation of *Litchfield* county, within the local limits of which said soci-

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1833.*

Somers
*v.*
Miner.

ety is, was legally warned and held at *Woodbury,* on the 7th of *October* 1817, for the purpose of considering and determining on the propriety of ordaining the Rev. Mr. *Andrew,* and setting him over the society as its pastor, in pursuance of a call from the society, accompanied with evidence, that the local limits of the consociation and of the association are co-extensive; that the consociation embraced all the ministers of the association, and no others; that they were all duly notified to attend the meeting for the purpose above-mentioned; and that a majority of the ministers belonging to the association were present.

It was proved, that the consociation and association are distinct tribunals, with different powers, organized for different purposes and composed of different members; the consociation being composed of the ordained congregational ministers living within its limits, and of one lay delegate from each of the congregational churches; and the association consisting exclusively of the ordained ministers.

The plaintiffs offered evidence to prove, that after the consociation had determined, by an unanimous vote, that it was expedient to set the Rev. Mr. *Andrew* over the society, the ministers then present, being a majority of the members of the association, voted to proceed to his ordination; and that they did, in pursuance of that vote, proceed to ordain him and set him over the society; and that these proceedings were in conformity with the practice and usages of the congregational churches and societies within the limits of the association; it being the usage of such churches for the consociation to determine on the expediency of forming the connexion, and for the association to perform the ceremony of ordination. They further offered evidence to prove, that Mr. *Andrew* had, ever since his ordination, been recognized and received as a member of the association.

The defendant claimed, that such evidence was not competent to prove, that Mr. *Andrew* had been approved, by the association; and prayed the judge so to instruct the jury.

The judge instructed the jury, that if they should find the facts as claimed by the plaintiffs, they must find, that Mr. *Andrew* had been approved by the association of ministers, within the true intent and meaning of the contract; and that the objection urged ought not to prevail.

The defendant claimed further, that the contract was void, not being founded on any sufficient consideration; and prayed the judge so to charge the jury. But the judge charged the jury, that there was a sufficient consideration to support the promise of the defendant, contained in the writing.

The jury returned a verdict for the plaintiffs; and the defendant moved in arrest of judgment for the insufficiency of of the declaration, and for a new trial for a mis-direction. Both motions were reserved for the consideration and advice of this Court.

*Bacon* and *J. W. Huntington,* in support of the motion, contended, 1. That no sufficient consideration was shewn. In the first place, none is derived from the settlement and support of a minister by the society. At the time of the subscription, the society had no minister; and there was no agreement on the part of the society, to settle one afterwards. The plaintiffs should have averred, and proved, that on the faith and in consideration of the defendant's subscription, they had settled and supported a minister; but there is no such averment, and no such proof. And even if there had been, the consideration would have been insufficient, as the society would, in that case, have only done what it was its duty to do, without the defendant's subscription.

As to any benefit to the defendant, by lessening his taxes; it is to be observed, first, *non constat* that any taxes would have been laid, or would have been necessary; and secondly, that the defendant might have freed himself from taxation, at any moment, by leaving the society. It is not shewn, that the defendant has been benefitted by any thing *legally valuable.* *Phillips Limerick Academy* v. *Davis,* 11 *Mass. Rep.* 113. 118.

2. That the condition requiring the subscriptions to be *well secured,* had not been complied with. The mere subscription of the amount, by responsible persons, is not enough. This appears, first, from the *terms* of the writing—" there shall be subscribed *and well secured,*"—importing that something beyond the subscription was required. Secondly, the *object* of the subscription demands this construction; which was, to raise a *perpetual fund,* not liable to be destroyed, by the incessant fluctuations in the circumstances of individual subscribers.

Somers
*v.*
Miner.

3. That there had been no waiver of performance, by the defendant ; the act done by him being entirely consistent with a reservation of right to insist on the condition.

No parol assent or silent acquiescence will destroy the effect of a condition, or amount to a waiver. *Jackson* d. *Bronck* v. *Crysler*, 1 *Johns. Ca.* 125. *Mounsey* v. *Drake* & al. 10 *Johns. Rep.* 27. But if the subscribers had expressly agreed to waive the condition, and to be still bound by the subscription, this would lay no foundation for a recovery on the original contract : the action must be brought on the new agreement. *Littler* &. al. v. *Holland*, 3 *Term Rep.* 590. At any rate, the waiver should have been alleged and proved, and is not available under these pleadings, *averring performance*.

4. That the case does not shew, that Mr. *Andrew* was approved by the association. The ministers were notified to attend a meeting of the consociation, and not of the association ; no meeting of the association, as a body, was, in fact, held ; no vote was passed, or act done, by the association, *as such*. The ordination was performed, not by the association, but by the clerical part of the consociation.

*J. Strong* jr. and *T. Smith*, contra, contended, 1 . That there was sufficient consideration to support the promise. Among the ingredients, which enter into it, are the following. First, the charge of the fund by the society, and the expenses of superintending and managing it. Secondly, the obligations and expenses, incurred by the society, upon the faith of this fund, in order to maintain the gospel ministry. *The Worcester Turnpike Corporation* v. *Willard*, 5 *Mass. Rep.* 80. 85.—Thirdly, mutual contribution ; the subscription of one person being another's inducement to subscribe. *Cockshott* & al. v. *Bennett* & al. 2 *Term Rep.* 763. *Jackson* & al. v. *Lomas*, 4 *Term Rep.* 166. *Leicester* & al. v. *Rose*, 4 *East* 372.—Fourthly, exemption from taxation, as a member of the society. Fifthly, promotion of the corporate interest. *The Worcester Turnpike Company* v. *Willard*, 5 *Mass. Rep.* 80. 86. *Gilmore* v. *Pope*, 5 *Mass. Rep.* 491. Sixthly, perpetuation of the blessings of the gospel. *The First Religious Society in Whitestown* v. *Stone*, 7 *Johns. Rep.* 112.

2. That the only security contemplated by the contract,

was the names of responsible subscribers. If further security was intended, what was it? A surety or a mortgage. It is here to be borne in mind, that no subscriber was obliged to pay the principal, during his life, if he paid the interest punctually, and the principal was secure. Now, it is hardly to be supposed, that it was intended, that each subscriber should get one who was willing to stand his *surety for life*, or that he should encumber his real estate for that period. If this had been intended, it may reasonably be supposed, that such a feature in the contract would have been made the subject of an *express* stipulation. If the idea of a mortgage be excluded, the words may be as well satisfied, by the signature of one name as two or more. The terms used do not ordinarily or properly import *collateral* security of any sort. If a fund is *safe*, it is *well secured;* and it may be rendered as safe, by one man's name, as by the names of twenty others. In *Phelps* v. *Yeomans*, 2 *Day* 227. it was decided, that the "security" required of the plaintiff on an attachment, might be his own bond without surety. Further, the parties have given a *practical construction* of the contract ; no other security than the subscriptions themselves having ever been given or required. *Cooke* v. *Booth, Cowp.* 819.

3. That if the condition in question has not been strictly complied with, the defendant has waived the benefit of it, by treating his subscription as obligatory upon him, and paying the interest until 1829.

4. That the interest of the money subscribed had been appropriated to the support of a minister *approved by the association.* The members of that association were all notified to meet for the purpose of ordaining Mr. *Andrew ;* and a majority of them did meet and vote to ordain, and did ordain him. The ordination was the highest and most unequivocal act of approval, that could be adopted. Accordingly, he has ever since been received as a member of the association.

DAGGETT, Ch. J. The questions in this case relate to the sufficiency of the declaration, and the correctness of the charge to the jury.

1. Is the declaration sufficient? The only objection to it, is, that there is not a sufficient consideration shewn for the promise alleged. The declaration sets forth, among other

*Litchfield,*
June, 1833.

Somers
*v.*
Miner.

things, that the defendant, with many other persons, being members of the *Presbyterian* or first ecclesiastical society of *Woodbury,* associated together to raise a fund for the support of the gospel ministry, by subscription. The defendant subscribed 500 dollars, in the year 1816 ; and has ever since, until the 1st day of *January* 1829, paid the interest thereof, it being one of the terms of the subscription, that the interest only should be paid, so long as the principal was secure. This interest was to be exclusively devoted to the support of the *Presbyterian* ministry, for the purpose of perpetuating the blessings of the gospel to the defendant and the other members of the society.

If this be not a sufficient consideration for a contract, it is difficult to imagine one. He was to be relieved from taxation—from his proportion of the burdens of the society—to the extent of the income of the fund raised. There was, then, a direct pecuniary benefit, as the case might be ; for it is to be noticed, that it appears on this declaration, that two other members of the society became subscribers to the amount of 1000 dollars, each ; several others to the amount of 500 dollars, each ; and many, in less sums ; so that the whole sum subscribed, was 5270 dollars. Now, is it to be endured, that this defendant should be permitted to defeat this laudable object, by withdrawing his subscription, when, by that subscription, he has induced many others to associate with him ? I think, that in this view of the case, this objection cannot prevail.

But again ; there are not wanting approved authorities directly in point. " It is a sufficient consideration," says *Marshall,* Ch. J. in *Violett* v. *Patton,* 5 *Cranch* 142. 150. " that something valuable flows from the person to whom the promise is made, and that the promise is the inducement to the transaction." In *The First Religious Society of Whitestown* v. *Stone,* 7 *Johns. Rep.* 112. it was holden, by the supreme court of *New-York,* that the preaching of the gospel was a sufficient consideration for a promise ; and in *Dieffendorf* v. *The Reformed Calvinistic Church of Canajoharie,* 20 *Johns. Rep.* 12. the same doctrine necessarily resulted from the decision. The same general doctrine is fully recognized in relation to subscriptions for building turnpike roads, in *The Worcester Turnpike Corporation* v. *Willard,* 5 *Mass. Rep.* 80. in *Gilmore* v. *Pope,* 5

Litchfield,
June, 1833.

Somers
v.
Miner.

*Mass. Rep.* 491., and in *The Trustees of Farmington Acade-*
*my* v. *Allen*, 14 *Mass. Rep.* 17°.   In short, a more unfounded
objection cannot be urged.

2.   The other objections arise upon the motion.

First, the subscription was not to be binding, unless 5000
dollars should be subscribed and *well secured*, by a specified
time.   It is a part of the case, that upwards of 5000 dollars
was subscribed, and was secured only by the signatures of
the subscribers, who were and are *responsible* men.   The
case also finds, that the defendant has paid the interest, ac-
cording to the terms of the agreement, from the time of enter-
ing into it until the 1st of *January*, 1829.

It was objected, by the defendant, that this is a condition pre-
cedent, and not being performed, he was never liable.   It was
answered, first, that he, by his payment of interest annually,
for twelve years, had waived the non-performance of the con-
dition ; and secondly, that the condition had been substantial-
ly complied with, or, in other words, the sums subscribed
were *well secured*.   The judge expressed to the jury his opin-
ion, adopting the first position, that the condition had not been
fulfilled, but had been waived by the defendant, under and by
virtue of the circumstances.   Without enquiring here in-
to the doctrine of waiver, I am well satisfied, and such I un-
derstand to be now the unanimous opinion of the court, that
the condition annexed to this agreement, has been complied
with.

Here an enquiry arises, what is the meaning of the expres-
sion *well secured ?*   These are the terms employed.   There is,
certainly, nothing necessarily implying *collateral* security.
If the parties had so intended, there were apt expressions in
common use, for the purpose.   If a mortgage or other pledge ;
if a surety or sureties had been contemplated ; provision
would have been made to that effect.   *Well secured* is satis-
fied, by the signature of one responsible man.   The number will
not vary the *kind* of security ; and if one is fully responsible,
and the motion admits that all the subscribers were so, then
the sums are well secured, unless it be true, that nothing is
well secured, which will admit of greater security.   No one
will assert, that a *mortgage* was required.   Were *sureties* re-
quired ?   There can be no good reason for this ; and there is
one stipulation in the agreement, which seems strongly oppos-

ed to this idea, *viz.* the provision that the money need not be paid during the lives of the subscribers, if the sums were safe. Whoever became surety, would be so for life ; certainly an embarassing provision.

There is only one adjudged case, within my knowledge, bearing directly on this point. In *Phelps* v. *Yeomans,* 2 *Day,* 227. a question arose, whether the bond of the plaintiff *alone* was sufficient, under the statute then in force, *(a)* which required, that when the plaintiff took out an attachment, he should give "sufficient *security* to prosecute his action to effect," &c. On a plea in abatement to that process, for a noncompliance with the provision of the statute above referred to, it was holden, by the lower courts, and confirmed in this, that the plaintiff's *own* bond was, in that case, *sufficient security.*

Secondly, it is insisted, that there is another condition annexed to this agreement, which has not been complied with. The money raised by the income of this fund, has not been appropriated for the support of a minister approved by the association of ministers of that district. The facts admitted are—that in 1817, the Rev. Mr. *Andrew* was ordained, by the ministers of the association to which that church belonged, and has ever since been received and recognized by that body. The objection comes rather late ; but I will examine it.

The stipulation in the agreement, is, that the principal sum is to be and remain a perpetual fund, and the interest thereon to be appropriated, exclusively, to the support of a *Presbyterian* minister, *to be approved by the association of ministers within whose limits the defendant then lived.* It is alleged, and not denied, that the interest has been appropriated, exclusively, to the support of the Rev. Mr. *Andrew.* The question, then, is, was he approved, by the association of ministers within the limits mentioned ?

The testimony adduced by the plaintiffs, as to this point, was, that all the ministers of the association were members of the consociation also,—a distinct body, consisting of the aforesaid ministers and a lay delegate from each church ; that according to the usages of the *Presbyterian* churches in *Connect-*

*(a) See Stat.* 24. *ed.* 1796.

*cut,* the consociation decided on the expediency of settling a clergyman, and then the association proceeded to ordain him : that the consociation met for the purpose of deciding the question of expediency ; determined in favour of it ; and then the association, consisting of a majority of the ministers within the limits, proceeded to, and did, in fact, decide, that he should be ordained, and the association accordingly ordained him over the church and society ; and have ever since recognized him as a member of their body. It also appears, that the members of this consociation were all notified to attend ; and that their limits were co-extensive with the limits of the association, and included none others ; and that a majority did attend.

Now, it is insisted, that Mr. *Andrew* has not been approved, by this association. It is said, that no vote of this body is shewn directly approving him. Nor is such a vote, in my judgment, at all necessary. The defendant and the other subscribers to this fund knew, that an association was not an incorporated body ; that no legal proceedings could be required ; that no officer, either moderator or president, or secretary, or clerk could be recognized as such ; but still, that these bodies had meetings ; and that they, to a certain extent, were known among the other informal, and by law acknowledged bodies of men, as having a superintending care of our churches. The usages of these associations of the ministers of the churches, are to be respected in matters within their jurisdiction ; but they are not legal meetings ; and their proceedings may be shewn, by such evidence as, from the nature of the case, can be obtained. At any rate, these associations are referred to, in this agreement ; and their approval only is required. How that approbation shall be evidenced, is not provided ; nor, in my judgment, is it of any importance, provided the fact be shewn.

The two great facts, that he was ordained a minister over this church and society, by a majority of the ministers of that association, in the year 1817, and that ever since, he has been recognized as a member of that association, ride over all other considerations, and render unnecessary any other or further proof, that he was, and constantly has been, approved, by the association referred to in the agreement.

Somers
*v.*
Miner.

The motion in arrest, therefore, cannot prevail ; and a new must be refused.

The other Judges were of the same opinion.

> Motion in arrest overruled ; and
> New trial not to be granted.